The bill states that the complainant, Elizabeth’s fa-. ^ier-‘ Thomas Bell, deceased, duly executed his last will, dated 16th August, 1795, and died on the 7th Septem-|)ei^ 17-95. That by the said will he bequeathed to his wife Sarah Bell, a number of negro slaves named therein, a?ul some other personal estate for her widowhood, and afterwards to be divided among the testator’s then sur-u viving children. That he also bequeathed to the comP^a”)an^ Elizabeth, being one of bin daughters, half of a tract of land of 250 acres, one fifth of all his negroes, (including the increase of those bequeathed to -Ms wife} *593 also one fifth of all his horses, and one sixth of ail his cattle, &c. The estate to be. divided upon complainant's marriage,, or coining of age. That the testator also further disposed of the rest of his estate equally among his several children, and directed that upon the death of any oí" them without leaving lawful issue, their portion should be dfv ided among the survivors: of w luch will the testator appointed John M. Verdier and Jehu M‘Kee, to be executors; and they qualified and possessed themselves of the estate of the testator, and received the profits thereof for the use of the children of the testator.
The complainants further shew, that the family of the testator at his death, consisted of his wife, the complainant Elizabeth, also two other daughters, Mary and Sarah Bell, and two sons, Thomas and John Bell. That complainant’s mother, eight months after the death of the testator, bore a son, for whom no provision was made by the will, which child would remain unprovided for, if the law did not relieve it. And the complainants further shew, that Sarah Bell, one of the testator’s daughters died in about thirteen months after the testator; and her share of the, estate became by the said will, divisible among the surviving children. That the complainants have since inte renamed on the 10th of May, 1799; and have since often desired of the said executors, an account of the testator’s estate, with its profits, and their application; and also the payment of whatever should, upon a balance of accounts appear to be due to them. Thai, they have also applied for a division of the personal estate, and their share as well of that, as of the real estate; which the said executors have refused to comply with.
The bill further prays an answer account, division, and statement of the said estate; and also for a writ of subpsena.
The defendants in their answer, admit the will of the late. Thomas Bell, as stated in the bill; and also that they proved it in the court of ordinary for Beaufort District, on the 14th October, 1795, and qualified under it, as executors. The defendants also admit the intermarriage ox $he complainants, and their application for an account of *594 the profits of the said estate, and for the payment of their proportion, and for a division, conformable to the said, will, which applications the defendants declined complying with, because the wife of the testator was enseint at his decease, and has since borne a son, for whom no provision is made by the will, but who is entitled by the law to a certain proportion of the estate; and because one of the daughters and legatees died on the 29th of August, 1796, unmarried and intestate, whose share of the estate is by will divisible among her brothers and sisters; but in what proportions defendants cannot determine without the intervention of the court.
The defendants further admit that under his will, they did possess themselves of ihc estate of the testator, and that the complainants are entitled to an account and proportion of the estate consistently with the said will, and with the rights of the posthumous child, and other children of the said Thomas bell. The defendants offer to do as they shall be directed by the court, being indemnified therein; and the defendants crave leave to refer the court to the accounts of the said estate, herewith filed and marked A and B.
There was no point of litigation in this case, but to determine the rights of the posthumous child. By the statute of the 13th March, 1789, section 8, it is enacted, « that if no provision shall be made by the will of the testator for any child or children that may be born, after Ms death, such child or children shall be entitled to an equal share of all real and personal estate given to the other child or children, who shall contribute to make up such share or shares, according to their respective interests, or portions derived to them, under such will.”
The court said that the provisions of the statute are too clear to admit dispute.
1st. The court decreed the delivery to John Talbird and Elizabeth his wife, of the tract of land devised. 2d. The delivery to John Talbird and Elizabeth his wife, of one sixth part of the personal estate of the testator, instead of one fifth part bequeathed to Elizabeth: this arises from the birth of a posthumous child, after the *595 decease of the testator. 3d. The delivery to John Tal-bird and Elizabeth his wife, of one filth part of the per-tsonal estate, bequeathed to Sarah, a daughter of the testator, who died since his death, and alter the birth of the posthumous child. Commissioners to be appointed to divide the personal estate agreeably to the act for abolishing the rights of primogeniture. The real anil personal estate delivered to John Talbird and Elizabeth, to stand charged with raising a sum oí* 100J. for the posthumous child, as their proportion to be contributed as an equivalent to the land devised specifically to the other children; and also to remain chargeable with their proportion of the posthumous child’s one fifth part of the 400i. directed to be raised by the devisees of the land, for Sarah Bell, one. of the legatees, who hath since died. And that the following persons (A. B. C. D. E.) be commissioners for dividing the estate agreeably to the act for t’boiisMng the rights of primogeniture.